IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT KYLE and | ) | |
| JOANN TRUEMANN, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Case No. 21-mc-9004-SRB |
| | ) | |
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## ORDER

Before the Court is Petitioners Robert Kyle and Joann Truemann's ("Petitioners")

Petition to Compel Subpoena Compliance. (Doc. #1.) The parties have fully briefed the matter,

and the Court held oral arguments on the petition on April 9, 2021. For the reasons stated

below, the petition is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

A synopsis of the relevant facts to this matter is as follows. Petitioners are plaintiffs in a

related class action lawsuit seeking redress against Charter Communications, Inc. ("Charter")

for alleged violations of the Telephone Consumer Protection Act's ("TCPA") Do Not Call

Registry regulations, 47 C.F.R. § 64.1200(c)(2). *See Kyle v. Charter Commc'ns Inc.*, No. 20-cv-

00062-SRB (W.D. Mo. filed Jan. 28, 2020). Through the discovery process in the underlying

class action, Petitioners claim they have identified "4,213,033 unique phone numbers that were

called at least twice in a 12-month period" by Charter. (Doc. #1, p. 3.) Petitioners argue that in

order to prove these calls violated the TCPA, they need to know if and when the identified

phone numbers were placed on the National Do Not Call Registry ("DNC Registry").

The Federal Trade Commission ("FTC"), a nonparty in the underlying lawsuit, manages the DNC Registry, which is a list of telephone numbers that consumers have registered with the FTC to prevent intrusive and unwanted telemarketing sales calls. The FTC grants certain entities, including telemarketers, access to the DNC Registry so they are aware of which phone numbers have been registered and are therefore illegal to call under certain conditions. On October 9, 2020, Petitioners sent a *Touhy*[1] request pursuant to 16 C.F.R § 4.11(e)(3) and a subpoena to the FTC's General Counsel in Washington D.C. (Doc. #1-1.) The *Touhy* request and subpoena sought disclosure of:

a. The National Do Not Call Registry, including all phone numbers and dates of registration or removal from such

or, alternatively,

the [DNC Registry] dates of registration or removal for the list of 4,213,033 phone numbers being provided concurrently hereto via email in electronic CSV format.

b. To the extent the FTC will be providing registry information for the discrete list of 4,213,033 phone numbers, corresponding contact information (e.g., name, address, email), if available.

(Doc. #1-1, p. 8.) On October 23, 2020, the FTC informed Petitioners of its objection to comply with the subpoena, stating, in part, that the FTC's compulsory process considerations detailed in 16 C.F.R. § 4.11(e)(5) warrant noncompliance. (Doc. #1-3.)

The parties conducted a meet-and-confer conference on October 27, 2020, to discuss the discovery request, but were unable to reach an agreement. In turn, Petitioners filed suit in the Northern District of Illinois seeking a court order compelling compliance with the terms of the

---

[1] The term "*Touhy* request" refers to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), which upheld agency regulations prohibiting employees from releasing documents without consent of the agency head.

subpoena.  The case was subsequently transferred to the Western District of Missouri, and the undersigned now presides over this case.

## II.  LEGAL STANDARD

"Discovery is 'accorded a broad and liberal treatment.'"  *Simpson v. Magnum Piering, Inc.*, No. 17-cv-00731-NKL, 2018 WL 3352664, at *3 (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  In determining relevance and proportionality, the court shall consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*; *see also Fair v. Commc'ns Unlimited Inc.*, No. 17-CV-2391-RWS, 2019 WL 227982, at *1 (E.D. Mo. Jan. 16, 2019).  Regarding a motion to compel discovery of electronically stored information, "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 26(b)(2); *see also* Fed. R. Civ. P. 45(e)(1)(d).

Pursuant to a subpoena under Rule 45, "a nonparty may be compelled to produce documents and tangible things or to permit an inspection."  Fed. R. Civ. P. 34(c).  A nonparty responding to a request for production under Rule 45 "must produce material in its possession, custody, or control, to the extent such material is otherwise relevant and discoverable."  *Dinosaur Merch. Bank Ltd. v. Bancservices Int'l LLC*, No. 19-CV-84-ACL, 2021 WL 918189, at *2 (E.D. Mo. March 10, 2021) (citing Fed. R. Civ. P. 45(a)(1)(iii)).  "Given that the [FRCP] allow[s] for broad discovery, the burden is typically on the party resisting discovery to explain

why discovery should be limited." *Dinosaur Merch. Bank Ltd.*, 2021 WL 918189, at *1 (internal citations omitted).

## III. DISCUSSION

The FTC argues that the Court should not compel production because (1) disclosure of the entire DNC Registry is irrelevant, (2) production is prohibited pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a, and otherwise infringes on important privacy rights, and (3) production would unduly burden the FTC, outweighing its benefits.[2] Petitioners argue that (1) the requested production is relevant to the underlying case, (2) the Privacy Act and other privacy interests do not prevent the disclosure of the requested information, and (3) production would not be unduly burdensome. The Court addresses the parties' arguments below.

### A. Relevancy of the Discovery

The relevance of the subpoena's discovery request is largely undisputed. The FTC's only relevancy objection is that the production of the entire DNC Registry is overbroad as it would contain hundreds of millions of phone numbers and registration data not applicable to the claims Petitioners assert against Charter. Petitioners argue the registration dates are relevant to

---

[2] While raised in its initial objection letter to Petitioners, the FTC's response to the petition (Doc. #16) does not argue that the subpoena is invalid pursuant to the service requirements of Fed. R. Civ. P. 45(b)(1) and the place of compliance requirements of Fed. R. Civ. P. 45(c)(2)(A). (Doc. #1-3.) Nor does the FTC advance its earlier arguments that compliance is precluded based on 16 C.F.R. § 4.11(e)(5) or 16 C.F.R. § 310.8(e). Further, Petitioners argue, and the FTC does not dispute, that "Because the [Petitioners] included a *Touhy* letter, during the meet-and-confer telephone call, counsel for the FTC confirmed that the FTC does not contend that *Touhy* represents any type of barrier to production in this case." (Doc. #1, p. 7.) The FTC also does not dispute Petitioners' contention that 16 C.F.R. § 310.8(e) "is not applicable, in any event, because it has nothing to do with compulsory process pursuant to a Fed. R. Civ. P. 45 subpoena." (Doc. #1, p. 8.) In turn, the Court need not address or consider any argument that these regulations prohibit the Court from compelling the FTC to produce the DNC Registry information. Even if the Court were to consider such arguments, the Court notes that agency regulations do not prohibit a court from ordering discovery. *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("'[T]hough an agency regulation may provide the method by which an agency head will comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure.'") (quoting JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 45.05[1][b] (3d ed. 2006)).

establishing their *prima facie* case against Charter, prove damages, and for class certification and class notice purposes.

The Court finds that the dates of registration and/or removal of the 4,213,033 numbers identified as potential TCPA violations in the underlying class action lawsuit are relevant to Petitioners' claims against Charter. Petitioners' underlying case alleges that Charter unlawfully called these phone numbers in violation of the TCPA because they were registered on the DNC Registry. The registration information is also relevant to determine damages because the TCPA provides for statutory damages per violation. 47 U.S.C. § 227(c)(5)(B). Thus, the registration status of each phone number is highly relevant to Petitioners' claims and important to the issues at stake. The contact information does relate to Petitioners' class action claims against Charter, including the need to demonstrate that the class is "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016). The contact information will also assist with class notification. *See* Fed. R. Civ. P. 23(c)(2)(B).

However, the Court is mindful of its obligation to limit the scope, frequency, and extent of discovery. *See* Fed. R. Civ. P. 26(b). Consequently, the Court finds that production of the entire DNC Registry is not proper. According to the FTC, the DNC Registry has over 240 million active registrations. Production of the entire DNC Registry would undoubtedly disclose the phone numbers and registration status of hundreds of millions of individuals who are not relevant to Petitioners' claims against Charter. Thus, Petitioners' request for the FTC to disclose the entire DNC registry is denied pursuant to Rule 26(b)(1) and 26(b)(2)(C)(iii).

Accordingly, the Court's discussion below will only concern the DNC Registry information of the 4,213,022 relevant phone numbers, including their registration status and the individuals' contact information associated with those phone numbers.

### B. Privacy Concerns

The FTC argues the DNC Registry, including the 4,213,033 unique phone numbers, registration data, and associated contact information, is covered under the Privacy Act. According to the FTC, the affected individuals have not consented to this disclosure and the Privacy Act prohibits disclosure of this personal information without the FTC first receiving the individuals' prior written consent. The FTC contends that obtaining this prior written consent or otherwise providing prior notice would be unduly burdensome, and that disclosure of the personal information infringes on the privacy rights of the affected individuals. Petitioners argue that the Privacy Act does not bar production of the requested DNC Registry information because the sought-after information is already made publicly available, nor does the Privacy Act prohibit a Court from ordering the FTC to produce DNC Registry information.

### 1. The Privacy Act of 1974, 5 U.S.C. § 552a

The Court will first address whether the requested discovery is covered under the Privacy Act and what, if any, impact that has on the Court's discovery analysis. The Privacy Act states, in relevant part, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," with twelve exceptions. 5 U.S.C. § 552a(b). A "record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including . . . and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual[.]" *Id.* at § 552a(a)(4). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular

assigned to the individual." *Id.* at § 552a(a)(5). The Court finds the phone numbers and associated contact information in the DNC Registry are covered records under the Privacy Act.

However, the Privacy Act has a number of exceptions to the prior-consent requirement, including when disclosure is "pursuant to the order of a court of competent jurisdiction."[3] *Id.* at § 552a(b)(11). Here, Petitioners seek a specific court order directing disclosure. While the Eighth Circuit has not yet addressed this issue,[4] most courts interpret § 552a(b)(11) to mean that the Privacy Act does not bar court-ordered discovery or otherwise create a higher standard for disclosure of covered records. *See, e.g.*, *Laxalt v. McClatchy*, 809 F.2d 885, 887 (D.C. Cir. 1987) ("The Privacy Act, however, does not create a qualified discovery privilege as that concept is generally understood . . . . Neither the statute nor anything in its legislative history specifies the standards for issuance of such a court order. We therefore find no basis for inferring that the statute replaces the usual discovery standards of the FRCP[.]"); *Clavir v. United States*, 84 F.R.D. 612, 614 (S.D.N.Y. 1979) (holding the Privacy Act "cannot be used to block the normal course of court proceedings, including court-ordered discovery"); *Garraway v. Ciufo*, No. 17-cv-00533-DAD-GSA-PC, 2020 WL 1263562, at *8 (E.D. Cal. Mar. 16, 2020) ("[R]ecords that might otherwise be protected by the [Privacy] Act may still be discovered through litigation if ordered by a court."). In turn, "a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards[.]" *Laxalt*, 809 F.2d at 889.

---

[3] A court of "competent jurisdiction" has been equated with personal jurisdiction. *See Laxalt v. McClatchy*, 809 F.2d 885, 890-91 (D.C. Cir. 1987). Here, neither party has challenged the personal jurisdiction of the Court, and therefore the Court finds it meets the "competent jurisdiction" requirement of § 552a(b)(11).

[4] The Eighth Circuit has held that "[f]or purposes of this appeal only, we assume, but do not decide, that the subpoena was not an 'order of a court' within the meaning of exception 11." *Bruce v. United States*, 621 F.2d 914, 916 (8th Cir. 1980). However, this case is easily distinguishable from *Bruce* because Petitioners seek a specific court order directing disclosure.

Still, "the applicability of the Privacy Act to the materials requested is a relevant factor for the District Court to consider in determining the appropriate scope and manner of discovery in a given case." *Id.* "Where the actual content of the record has the potential to cause harm to the affected party, a court supervising discovery should consider this factor in determining how to exercise its traditional authority to limit disclosure." *Id.* at 890; *see also Miscellaneous Docket Matter No. 1. v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) ("[D]istrict courts should not neglect their power to restrict discovery where justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.") (internal citation and quotation marks omitted); Fed. R. Civ. P. 26(c).

During oral argument, the FTC conceded that § 552a(b)(11) is an applicable exception to the prior-consent requirement of the Privacy Act, and that the Court may order production of the DNC Registry information without the prior written consent of the 4,213,033 affected individuals. The Court agrees and finds the Privacy Act does not create an undue burden for the FTC.[5] However, because any privacy concerns impacted by disclosure are relevant to the Court's determination in whether compliance is appropriate, those concerns are addressed below.

### 2. The Privacy Rights of the Affected Individuals: The Registration Status of the 4,213,033 Phone Numbers

Generally, the Privacy Act reflects "a strong privacy interest . . . in the nondisclosure of complied computerized information[.]" *U.S. Dep't of Just. v. Reporters Comm. for Freedom of*

---

[5] During oral argument, the FTC also argued that § 552a(e)(8) of the Privacy Act poses an undue burden which should prevent discovery. Section 552a(e)(8) states that agencies which maintain a system of records shall "make reasonable efforts to serve notice on an individual when any record on such individual is made available to any person under compulsory legal process when such process becomes a matter of public record[.]" Thus, the FTC contends it will be burdened by the need to serve every individual whose information will be disclosed with notice, albeit such notice is not a prerequisite to disclosure. This argument is unpersuasive. First, the Court is not convinced such notice would be required if the discovery was subject to a protective order ensuring the information not become a matter of public record. Additionally, even if such notice were required, the burden of needing to provide "reasonable" notice does not outweigh the needs of the discovery to the case, particularly when the FTC does not provide the Court with a cost estimation it would incur in complying with § 552a(e)(8) to weigh against the importance of disclosure.

*Press*, 489 U.S. 749, 766 (1989). However, in this particular case, disclosure of the affected individuals' phone numbers and registration statuses risks little, if any, privacy infringement. After considering the potential privacy concerns associated with disclosing the registration status of the identified phone numbers, the Court finds that the individuals' privacy interests do not outweigh the need for discovery and believes that any concerns can be adequately addressed by a protective order.

Congress enacted the TCPA, in part, to remedy the harm caused by "the unwanted intrusion and nuisance of unsolicited telemarketing phone calls[.]" *Golan v. FeeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) (internal citation and quotation marks omitted). Congress found specifically that unrestricted telemarketing calls themselves are "an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 10-243, § 2, 105 Stat. 2394. To protect themselves from receiving such calls, consumers register their phone numbers with the DNC Registry maintained by the FTC. The FTC then discloses the DNC Registry "to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority." 16 C.F.R. § 310.8(e). The disclosure of the DNC Registry to the above entities is, in part, to provide notice that certain telemarketing calls to the listed numbers are unlawful. *See id.* at § 310.8(a). To ensure telemarketer compliance and to vindicate the harm caused by DNC Registry violations, Congress created a private right of action for any person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the TCPA's do-not-call rules. 47 U.S.C. § 227(c)(5).

Against this backdrop, the Court finds disclosure of the phone numbers and their registration status will not violate any privacy interest, particularly when the purpose of the

disclosure is to redress the very harm the affected individuals sought to avoid when adding their phone number to the DNC Registry. The Court finds it would be antithetical to the TCPA's purpose for the FTC to routinely disclose the registration status of millions of phone numbers to telemarketers, yet prevent that same disclosure in connection with a class-action suit specifically asserting the private right of action authorized by the TCPA. The FTC's routine disclosure to authorized entities limits any privacy interest in nondisclosure, as consumers are aware that the registration of their phone number will, in some way, be disseminated. While the FTC argues that Petitioners do not fit the exclusive access list described in 16 C.F.R. § 310.8(e), court-ordered discovery is not bound by this limitation, and the FTC does not argue otherwise.

Finally, the Court finds that any potential harm, annoyance, embarrassment, or oppression which may result from the disclosure of the individuals' phone numbers and registration status will be adequately protected by a protective order. *See* Fed. R. Civ. P. 26(c). The Court directs the parties to, within fifteen days, submit an agreed-upon motion for a protective order designed to address any privacy concerns, including measures which ensure that the information disclosed by the FTC remains confidential and may only be used in connection with the underlying litigation.

### 3. The Privacy Rights of the Affected Consumers: Additional Contact Information Associated with the 4,213,033 Phone Numbers

Contrary to the registration status and phone numbers of the affected individuals, the Court finds that the risk of privacy infringement in the production of the individuals' contact information associated with the phone numbers outweighs the likely benefit of its disclosure. First, unlike the individuals' phone numbers and registration status, the FTC never discloses additional contact information such as names, addresses, and emails. While an individual can expect the registration of his or her phone number to be disclosed, nothing in the TCPA nor FTC

regulations sets an expectation that any other personal identifiable information will be shared. The FTC contends the only reason this information is requested is to allow consumers to confirm their registration. Additionally, Petitioners admit the contact information would assist them in providing class notice in the underlying case. Such unsolicited contact would betray the confidence the individuals put in the FTC when providing this additional personal information and is contrary to the privacy goals of the TCPA.

As a result, the Court finds the risk of annoyance or oppression caused by the disclosure of additional contact information precludes its discovery. *See* Fed. R. Civ. P. 26(c)(1)(A); *Miscellaneous Docket Matter No. 1*, 197 F.3d at 927. The Court also orders the parties are prohibited from using the discovery produced in this matter to contact the affected individuals.

### C. Undue Burden

Lastly, the FTC argues that compliance with Petitioners' subpoena would be unduly burdensome. The FTC contends that data extraction would be costly, create a cumulative effect in which the FTC would be bombarded with similar disclosure requests, and argues that the FTC is not the only available source for Petitioners to receive the desired DNC Registry information. Petitioners contend that the FTC has not met its burden in establishing the exact cost of the data extraction. Specifically, Petitioners note they have offered to pay for the cost of production, which mitigates the FTC's compliance burden, and argue that production is appropriate because Petitioners cannot get the requested information elsewhere. Given this Court's earlier analysis, the Court need only to focus on the potential burden of disclosing the registration dates of the 4,213,033 identified phone numbers.

"On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue

burden or cost." Fed. R. Civ. P. 26(b)(2). "In determining whether a subpoena imposes an undue burden, 'the Court balances the relevance of the [request] and the requesting party's need for [the information] against the potential hardship to the party subject to the subpoena.'" *Simpson*, 2018 WL 3352664, at *3 (quoting *Covey v. Wal-Mart Stores E., L.P.*, No. 16-01262-CV-W-ODS, 2018 WL 703286, at *1 (W.D. Mo. Feb. 2, 2018)). A party seeking to limit discovery must "establish grounds for not providing the discovery that are specific and factual; the party cannot meet its burden by making conclusory allegations as to undue burden." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (internal citation and quotation marks omitted). The opposing party must "provide some evidence regarding the time or expense required." *Id.* (internal citation and quotation marks omitted).

"[C]oncerns for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Miscellaneous Docket Matter No. 1*, 197 F.3d at 927. Additionally, there exists a "serious and legitimate concern that [government] employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Exxon Shipping Co v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (cited favorably by *Miscellaneous Docket Matter No. 1*, 197 F.3d at 927). A court shall consider the "cumulative impact" of repeated requests for production. *Id.* (internal citation omitted). Also, a court shall consider whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

After careful consideration of the parties' arguments, the Court finds that Petitioners' discovery request, in its current form, would be unduly burdensome. While the FTC does not provide detailed information regarding the cost of compliance, it does indicate that the data

normally provided to subscribers of the DNC Registry does not contain registration and removal dates. Instead, when subscribers download the DNC Registry data, that information "includes only the phone numbers and the date [the subscriber] did the download. It does not provide any other information about the consumer or the dates and times the number was added to the Registry." (Doc. #16-1, p. 2.) While Petitioners estimate that such a data extraction would only cost a few thousand dollars, the Court finds this argument ignores the probable result that other private litigants will start making similar demands on the FTC. In turn, the effect of such a court order could potentially have a significant impact on the FTC's limited resources.[6]

The Court notes that the FTC regularly provides registration status information to subscribers and there would be virtually no additional burden to provide the same here. The registration data is highly relevant and important to Petitioners' claims in the underlying case and the purpose of Petitioners' discovery request is to redress the exact harm the DNC Registry was designed to prevent. While the FTC argues it would have to create a custom list which only includes the phone numbers at issue in this matter and that doing so would be costly, it does not provide the Court with any specific time or cost estimation. In turn, the Court does not find the FTC has established an undue burden that justifies completely preventing any discovery of the DNC Registry. The Court does not find other sources of the registration are more convenient, less burdensome, or expensive. Petitioners have already engaged private vendors for the registration data without success. The FTC is the official manager of the DNC Registry, and any information provided to Petitioners from the FTC would be more reliable than information obtained from other sources.

---

[6] While the Court previously explained, on other grounds, why it declines to grant the discovery request of the individuals' additional contact information, the Court also finds such disclosure would only increase the FTC's costs, further making denial appropriate.

In balancing the FTC's burden with the relevance of, and Petitioners' need for, the requested discovery, the Court finds Petitioners are entitled to the same registration status data regarding the identified phone numbers as a telemarketer subscriber would generally have to the DNC Registry pursuant to 16 C.F.R. § 310.8(e). This discovery limitation will prevent the FTC from having to significantly alter its data extraction capabilities from what it already routinely discloses. The only additional extraction requirement is that the FTC shall provide the status for the unique phone numbers instead of a set number of area codes. To further limit the cost, the Court orders Petitioners to pay for the FTC's costs of production. The Court thus grants Petitioner's Petition to Compel in part, in accordance with the foregoing judicial limitations and terms.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Petitioner's Petition to Compel Subpoena Compliance (Doc. #1) is GRANTED IN PART to the extent that the FTC shall produce the National Do Not Call Registry registration status of the 4,213,033 phone numbers identified by Petitioners in *Kyle v. Charter Communications, Inc.*, 20-cv-00062-SRB. The registration information produced need only be the information that a subscriber of the National Do Not Call Registry would be provided pursuant to an access request made under 16 C.F.R. § 310.8(e). The FTC shall only produce the phone number and registration status. No additional contact information will be provided.

Additionally, it is **FURTHER ORDERED** that Petitioners shall pay for the reasonable costs incurred by the FTC in connection with complying with this Order.

It is **FURTHER ORDERED** that the parties are prohibited from using the National Do Not Call Registry data disclosed by the FTC in connection with this Order to contact any individuals whose records are disclosed.

It is **FURTHER ORDERED** that the parties shall meet and confer to reach an agreed upon motion and proposed protective order pursuant to Federal Rule of Civil Procedure 26(c) addressing any privacy and confidentiality concerns in connection with this discovery order, which includes ensuring that the information disclosed by the FTC remains confidential and that it may only be used in connection with the underlying litigation. The parties shall have fifteen (15) days from the date of this Order to agree to and file a motion for a protective order. Should the parties not agree, the Court will take the issue up as a discovery dispute pursuant to Local Rule 37.1.

It is **FURTHER ORDERED** that the Petition to Compel (Doc. #1) is DENIED in all other respects.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: April 14, 2021